**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THEODORE LEE OHMER, JR.,

   *Plaintiff*,

v.                                               CASE NO. 11-CV-12980

COMMISSIONER OF                  DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

   *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 10.)

Plaintiff was 48 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 28, 103.) Plaintiff worked on an assembly line for a car manufacturer for 28 years. (Tr. at 115.) Plaintiff filed the instant claim on November 8, 2007, alleging that he became unable to work on March 6, 2007. (Tr. at 103.) The claim was denied at the initial administrative stages. (Tr. at 48.) In denying Plaintiff's claim, the Commissioner considered other and unspecified arthropathies, muscle/ligament disorder, and fascia as possible bases for disability. (*Id.*) On May 14, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Thomas L. Walters, who considered the application for benefits de novo. (Tr. at 9-23.) In a decision dated May 28, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) Plaintiff requested a review of this decision on June 12, 2010. (Tr. at 5-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 10, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On July 11, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (*citing Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing Mullen, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse*, 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since March 6, 2007, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's carpal tunnel syndrome, status

post-surgical release; status post-elbow surgeries; tendonitis; and mild degenerative changes, right thumb, were "severe" within the meaning of the second sequential step. (Id.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17.) At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as an inspector. (Tr. at 18-19.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22-23.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that on June 23, 2006, an x-ray of Plaintiff's chest showed "no evidence for active chest disease." (Tr. at 138.)

On October 17, 1006, Plaintiff was "escorted into medical" at work after having "jammed his right arm trying to lift the hood up with the prop-rod." (Tr. at 145.) Plaintiff noted that he had surgery on his right elbow in 2005. (Id.) On October 23, 2006, it was noted that Plaintiff "was off work unexcused on 10-20-2006" and that Plaintiff stated "he was unable to work. Took Vicodin [for] ongoing severe pain at the right elbow." (Tr. at 148.) On October 26, 2006, Plaintiff "bumped against [a] stationary object" and aggravated his previous injury, so he was given a "return to work with restriction," but a doctor concluded that Plaintiff should remain "off work until next appointment 11-9-2006." (Tr. at 149.)

On November 6, 2006, Plaintiff again "bumped against [a] stationary object" and aggravated his previous injury. He was told to return to work with the restriction that he not use his right hand through December 21, 2006. (Tr. at 152.) An MRI taken November 6, 2006, of Plaintiff's right elbow showed "findings consistent with chronic tendonopathy of the common

7

flexor tendon with associated high grade partial tearing" and "findings consistent with mild to moderate chronic tendonopathy of the common extensor tendon origin at the lateral spicondyle." (Tr. at 139.) After reviewing these results, Dr. Andary noted that the test result "point[ed] against new nerve injury" and that he was "not sure why the medial arm [was] so painful." (Tr. at 156.)

On December 4, 2006, Plaintiff's restrictions were extended to January 2, 2007, and Plaintiff was referred to physical therapy. (Tr. at 155.) On December 7, 2006, Plaintiff again "bumped against [a] stationary object" and aggravated his previous injury. (Tr. at 156.) Plaintiff was told to return to work. (Id.)

On January 16, 2007, Plaintiff returned to work with restriction. (Tr. at 156.) On that same day, Plaintiff again "bumped into [a] stationary object" and aggravated his previous injury. (Tr. at 157.) It was noted that Plaintiff stated he felt "like he was hit with [a] hammer" and that although there was "objective swelling," Plaintiff was "able to fully flex elbow and grip with right hand" as well as take his coat on and off without difficulty. (Tr. at 157.) It was also noted that Plaintiff "appear[ed] to be able to do more," but he was given the restrictions of not using vibratory tools and only pushing or pulling up to 10 pounds with his right hand. (Tr. at 157.)

On February 19, 2007, Plaintiff bumped into a stationary object again and aggravated his previous injury. (Tr. at 157-58.) There was "no swelling noted" and "no locking of fingers noted," but there were "nicotine stains on [his] right hand." (Tr. at 158.) Restrictions were continued for another 6 months. (Id.)

On March 5, 2007, Plaintiff bumped into a stationary object and aggravated previous injury. (Tr. at 158.) On April 4, 2007, Plaintiff bumped into a stationary object and aggravated previous injury and since there were no jobs available, he was placed on disability until September 6, 2007. (Tr. at 159.)

8

On September 6, 2007, Plaintiff returned to work with the restriction that he not use vibrating tools, that he limit forceful gripping/grasping with his right hand and limit pushing/pulling with his right arm, i.e., less than 10 pounds. (Tr. at 160.) On that same day, Plaintiff bumped into a stationary object and aggravated his previous injury, and since there were no jobs available, Plaintiff was considered disabled until December 7, 2007. (Tr. at 161.) Dr. Schneider noted that Plaintiff complained of continual pain in his right hand and arm and a pulling sensation in his forearm under his scar from a previous surgery. (*Id*.)

On September 24, 2007, Plaintiff was examined by Jeffrey R. Levin, M.D., who noted that Plaintiff had carpal tunnel surgery in 1995 and again in 2004 on his right carpal and cubital tunnels and that on March 6, 2007, Plaintiff had an injury where he had a "traumatic tear to tendons in his right elbow." (Tr. at 163.) Dr. Levin diagnosed bilateral carpal tunnel syndrome, right cubital tunnel syndrome and possible C7 radiculopathy. (Tr. at 164.)

On October 18, 2007, an EMG was interpreted by Dr. Levin as showing "C6 radiculopathy on the right." (Tr. at 181.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on December 14, 2007, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 167.) There were no postural limitations, but Plaintiff was found to be limited in all of the manipulative categories, and there were no visual, communicative or environmental limitations established. (Tr. at 168-70.) The assessment also concluded that Plaintiff was "partially credible." (Tr. at 171.)

On February 27, 2008, Plaintiff sought treatment in the emergency room for left lower back pain and he was discharged with prescription pain medication. (Tr. at 208-09.)

On March 5, 2008, an NM bone scan showed "mild early uptake diffusely to the right distal forearm, however the pattern does not suggest reflex sympathetic dystrophy and may be related to mild hyperemia." (Tr. at 174.) The report also stated that there was "activity consistent with mild degenerative change at the bases of the thumb." (*Id*. at 174.)

On April 2, 2008, Dr. Levin adjusted Plaintiff's medications to add Lyrica after an addition diagnosis of chronic pain syndrome. (Tr. at 180.) Dr. Levin noted that in September 2007, Plaintiff "received his total and permanent disability from General Motors Corporation." (*Id*.)

On September 15, 2009, Plaintiff sought treatment in the emergency room for left shoulder pain and he was discharged with prescription pain medication. (Tr. at 196-207.)

On October 8, 2009, Michelle Spica, P.A., noted that Plaintiff was "[h]ere today wanting narcotic medications for his shoulder pain even though he is seeing a specialist and they have given him the Percocet." (Tr. at 211.) Plaintiff was suspected as having "altered one of the prescriptions from 10 to 40," and Plaintiff was "notified [that] we cannot give him narcotic medications secondary to the altered prescription and also he is receiving narcotics from a specialist and you can have only one physician write narcotic prescriptions for him at a time." (*Id*.) Plaintiff was "angry because he can no longer get Rx for controlled substance abuse here." (*Id*.)

Plaintiff was also treated by Shannon O. Wiggins, D.O., from December 2009 through April 2001. (Tr. at 182-95.)

Plaintiff indicated in his Daily Activity Report that he cares for his "grandchildren, adult children – financially occasionally," and that his roommates help him during "visits with grandchildren, change diapers, lifting, etc." (Tr. at 122.) Plaintiff indicated he has no problems with personal care, needs no reminders, prepares his own meals on a daily basis, does dishes, laundry, light dusting, and that he does not do any outside work. (Tr. at 122-24.) Plaintiff also

rides in a car and drives when not taking pain medication, shops in stores, is able to handle finances, talks and rides along with people around four times per week, watches television, gets along well with others, and handles stress and changes in routine well. (Tr. at 124-27.)

Plaintiff testified that he does not drive much because his prescription medicine is a narcotic that makes him tired and lightheaded. (Tr. at 32-33.) Plaintiff was living with his sister at the time of the hearing because he separated from his wife approximately three months before the hearing. (Tr. at 33.) Plaintiff testified that his right hand is dominant and that he tries to use it but it "feels like someone is jabbing straight needles into the end of my fingers all the time." (Tr. at 36.) He testified that he uses his left arm quite a bit to compensate and that he drops items if he tries to hold them in his right hand. (Tr. at 36-37.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who:

> would have the residual functional capacity for a range of light, unskilled work, that did not involve any overhead lifting or reaching with the right - - with the right upper extremity. Did not involved repetitive pushing, pulling, gripping or grasping with the right hand. Did not involve working around machinery or unprotected heights.

(Tr. at 43-44.) The VE testified that such a person could perform the 2,295 light and sedentary unskilled jobs of information clerk, the 2,845 unskilled light jobs as usher and the 1,000 semi-skilled, light jobs as gate guard available in the lower peninsula of Michigan. (Tr. at 44-45.) The VE also testified that if Plaintiff were found to be fully credible, specifically in his testimony that he need to nap everyday due to side effects of his medicine, that he doesn't drive, and that he is in pain 24 hours a day, that such a person would not be able to perform these jobs on a full-time basis. (Tr. at 45.)

**F.     Analysis and Conclusions**

1.  **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

2.  **Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred in assessing [Plaintiff's] credibility" and that he failed to properly assess medical evidence and form an accurate hypothetical. (Doc. 9 at 6-12.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i) [D]aily activities;

(ii) The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, . . . received for relief of . . . pain;

(vi) Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that substantial evidence supports the ALJ's credibility finding. The ALJ considered the appropriate factors and found that Plaintiff was "not

14

credible to the extent they are inconsistent with the above residual capacity assessment." (Tr. at 17.) As noted by the ALJ, although Plaintiff claimed sleepiness and the need to take naps most days, the record "contains no meaningful discussion in this regard[.]" (*Id.*) I suggest that the ALJ's credibility findings are supported by substantial evidence and, thus, that the hypothetical in accordance with these findings is also supported by substantial evidence.

Although Plaintiff underwent several surgeries, there was no medical opinion suggesting that those surgeries need to be repeated. Nor did any medical professional suggest any invasive treatment beyond prescription medicine and physical therapy for any of Plaintiff's accidents at work that aggravated his injuries.

Tests showed "findings consistent with mild to moderate chronic tendonopathy" and no new nerve injury such that Dr. Andary was "not sure why the medial arm is so painful." (Tr. at 139, 156.) In 2008, Plaintiff's thumb was found to have only "mild degenerative changes." (Tr. at 174.) I suggest that such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007).

Finally, Plaintiff's own testimony established that he is able to perform functions that are inconsistent with total disability, i.e., that he has no problems with personal care, needs no reminders, prepares his own meals on a daily basis, does dishes, laundry, light dusting[,]" and is also able to ride in a car and drive when not taking pain medication, shop in stores, handle finances, talk and ride along with people around four times per week, watch television, get along well with others, and handle stress and changes in routine well. (Tr. at 122-27.)

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); Frontier Ins. Co. v. Blaty, 454 F.3d 590, 596 (6th Cir. 2006); United States v. Sullivan, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. McClanahan, 474 F.3d at 837; Frontier Ins. Co., 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: May 1, 2012                             United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 1, 2012                                   By     s/Patricia T. Morris
                                                               Law Clerk to Magistrate Judge Binder